IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[29] MIGUEL VELÁZQUEZ RODRÍGUEZ,<br><br>Defendant. | CRIMINAL NO. 12-192 (CCC) |

**OPINION AND ORDER SETTING CONDITIONS OF RELEASE**

On September 22, 2012, a grand jury returned a superseding indictment against [29] Miguel Velázquez Rodríguez and other persons. ECF No. 124. Count three of said indictment alleges that beginning on a date unknown, but no later that in or about the year 2003, and continuing up to and until the return of the superseding indictment, in the Municipality of Fajardo, in the District of Puerto Rico, and elsewhere within the jurisdiction of this court, [29] Miguel Velázquez Rodríguez did knowingly and intentionally, combine, conspire, and agree with others, known and unknown to the grand jury, to commit an offense against the United States, that is, to possess with intent to distribute one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance; two-hundred and eighty (280) grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II Narcotic Drug Controlled Substance; five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance; and a measurable amount of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, all within one thousand (1,000) feet of the real property comprising a housing facility owned by a public housing authority, that is, the Santiago Veve-Calzada Public Housing

Project, Puerto Real Public Housing Project, Villa Fajardo Public Housing Project, Mansion del Sapo Ward, Maternillo Ward, Quebrada Vueltas Ward, Amparo Street also known as Calle Chiquita and other areas within and near the Municipality of Fajardo, Puerto Rico, all in violation of Title 21, United States Code, §§ 846, 841(a)(1), and 860. Count four of the indictment alleges that [29] Miguel Velázquez Rodríguez conspired with others to possess firearms in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(o).

A bail hearing was held on October 10, 2012. ECF No. 297. A detention order was issued as a result of the bail hearing. ECF No. 446. The court found that the presumptions of risk of flight and danger to the community triggered by count three of the indictment had not been rebutted, and detailed additional findings in support of the detention order, based on information contained in the U.S. Pretrial Services Report and the government's proffer of the evidence. According to the Pretrial Services Report, defendant had a monthly income of $900, yet he owns eight vehicles, only three of which were disclosed to the U.S. Probation Office: a Ford Econoline (2002), a Chevy Suburban (2007), a Toyota Corolla (2010), a Volkswagen Jetta (1998), a Mitsubishi Mighty Max (1994), a Trailer, Inc. (2013), a Target trailer (2013), and Tracker ER Marine (2013). Defendant owned a house at Urbanization Paseos in San Juan, which back at the time of his arrest still owed to the bank $58,642. Id.[1] Furthermore, the detention order specified that according to the government's proffer of the evidence: (i) one witness has seen Mr. Velázquez delivering large amounts of U.S. currency to co-defendant [1] Julio De Jesús Gómez; (ii) another witness will testify that defendant transports drugs, money, and firearms in limousines; and (iii) another witness knows that defendant sold one eighth of a kilogram of cocaine for [1] Julio De Jesús Gómez and has seen the defendant in

---

[1] **The fact that the house at Urbanization Paseos was in located in the Municipality of San Juan was drawn from the Pretrial Services Report.**

possession of an AK-47 rifle.  Id.

On July 24, 2013, Mr. Velázquez filed a motion requesting a reopening of the bail hearing, arguing that during the bail hearing "the Government put forth misleading allegations against" him.  ECF No. 797.  Moreover, Mr. Velázquez argues that he did not intentionally withhold information or failed to disclose assets.[2]  In particular, Mr. Velázquez states that because of the fluctuations in the tourism seasons, he does not have a fixed monthly income.  His monthly income ranges between $280 and $1,900 (ECF No. 797-1), and the $900 per month figure that he gave to the U.S. Pretrial Services Officer was meant to be an estimate within that range.

With respect to the residence at Urbanization Paseos, defendant argues that although he appears in the property title along with his former consensual partner Kathy Suárez Maldonado, he has waived his share of the property in favor of his son and that Ms. Suárez is the sole payor in the mortgage payments.  Although no deed either in English or with a certified translation has been submitted to support these representations regarding the house at Urbanization Paseos, the government has not contested them.

Turning to the vehicles that Mr. Velázquez failed to disclose to the U.S. Pretrial Services Officer when he was interviewed in preparation for his initial appearance, defendant acknowledges that he did not disclose the trailers because he "understood [they] were not actual vehicles."  ECF No. 797 at p.3.  Regarding the 1998 Volkswagen Jetta, Mr. Velázquez indicates that he did not disclose said vehicle because it was discharged along with other debts in a Chapter 13 bankruptcy proceeding and has long been out of his hands since he was unable to pay the monthly installments.

---

[2]Some of the exhibits submitted in support of the motion are in Spanish and lack certified translations.  ECF No. 797.  The same problem arises with tax returns and other exhibits submitted.  E.g., ECF Nos. 798 and 799.  The court cannot take into account documents that are not in English that have not been translated.  Defendant is granted thirty days from entry of this order to submit the certified translations of these exhibits.

Id.³ This Volkwagen Jetta, however, does appear in an undated (lacks the year) and untranslated report from the Department of Transportation of Puerto Rico classified as "venta condicional." ECF No. 797-6; see supra, n.2. With respect to the Mitsubishi Mighty Max, the same also appears in the same report from the Department of Transportation of Puerto Rico classified as "pérdida total no constructiva (chatarra)". Id. No limousine, argues Mr. Velázquez, is registered under his name.

In support of his request for release, Mr. Velázquez has also argued that he has had a consistent history of employment. Specifically, he submits evidence that he was employed at El Conquistador Resort from November 16, 1996 to August 3, 2011, ECF No. 797-7, and asserts that more recently he has been self-employed as a tourist excursions driver. As to this business related to tourist excursions, Mr. Velázquez also clarifies that Platinum Transportation Services is not a limousine service company, but rather a business that uses multi-passenger sport utility vehicles ("SUVs").⁴

At the bail review hearing that was held pursuant to the motion filed by defendant (ECF No. 846), the government conceded that the defendant had provided evidence regarding his past employment, yet remained steadfast in its request that Mr. Velázquez be kept detained pending trial. In particular, the government argued that three cooperating witnesses that personally know Mr. Velázquez and were involved in the conspiracy will testify at trial that defendant used his business to further his drug trafficking activities. According to the government, the first of these witnesses has seen Mr. Velázquez on several occasions retrieving bags of money from his business vehicles

---

³**Although defendant submits a Trustee's Final Report and Account printout in support of his motion requesting a reopening of the bail hearing and identifies a Popular Auto debt as corresponding to a Volkwagen Jetta, the document itself does not identify whether said debt is linked to that particular vehicle. ECF No. 797-5.**

⁴**At the original bail hearing held on October 10, 2012, the court asked defense counsel Alex O. Rosa Ambert if Platinum Transportation Services was a limousine service, to which counsel replied in the affirmative. (Recording of bail hearing at 5:15 p.m. - 5:16 p.m.).**

to deliver the money to [1] Julio De Jesús Gómez, one of the leaders of the drug trafficking organization charged in the indictment. This witness will testify that the money in those bags were drug proceeds. The second witness will testify that Mr. Velázquez sold cocaine for [1] Julio De Jesús Gómez and [4] José Santiago Gómez and has seen Mr. Velázquez with an AK-47 rifle in one of the vehicles he uses in his business. The third witness will testify that Mr. Velázquez is a "straw owner" of a limousine business for [1] Julio De Jesús Gómez and [4] José Santiago Gómez and that he transports drugs and money for them. In addition, the government proffered that Mr. Velázquez was listed as the sender and recipient (at the address in Ceiba stated in the Pretrial Services Report, which is also the residence where according to the government the business vehicles were parked at) of a UPS parcel seized by Homeland Security Investigations ("HSI") that contained $48,960.[5]

At the bail review hearing, Mr. Velázquez argued that he was not a straw owner, and that the his father, Miguel A. Velázquez Hernández owned the Ford Econoline vehicle as evidenced by documents tendered in support of the motion requesting a reopening of the bail hearing. ECF Nos. 797-8 and 797-9; see supra n.2 as to the latter exhibit. Defendant also argued that the fact that he underwent a bankruptcy proceeding is inconsistent with the lifestyle of a drug dealer. Moreover, defendant clarified that the house at Urbanization Paseos is located in the Municipality of Ceiba, not at the Municipality of San Juan, and that said house is not worth half a million dollars, but rather somewhere around $70,000 with little equity once the mortgage loan is taken into account. Finally, defendant stressed that there are no video or audio recordings, photographs, or documents to corroborate the government's proffer of the evidence.

A review of the evidence and arguments presented leads the court to conclude that defendant

---

[5]The government added that a source indicated that Mr. Velázquez received packages from mainland USA on a weekly basis.

has indeed rebutted the presumption of risk of flight. First, the concern of unexplained assets has been adequately addressed by defendant. The house that the Pretrial Services Report indicates is at Urbanization Paseos in San Juan is not in San Juan, but rather at Ceiba. The value of this property is not nearly what was estimated at the original bail hearing. Second, the court is willing to give defendant the benefit of the doubt regarding his explanations as to why he informed to the Pretrial Services Office only three vehicles. According to defendant, one vehicle is total loss (junk) and the other one he had to surrender as he was unable to make the monthly payments. The trailers he did not disclose as he thought that he only had to inform the cars that he owned, as opposed to vehicles that are attached to or drawn by automobiles. Third, defendant's mother's house at Jardines de Ceiba has a substantial equity of over $150,000, which could serve for purposes of a cash or secured bond. ECF No. 981 at p.10. Taking all of these factors into account and the fact that according to the Pretrial Services Report, defendant has resided all his life in the community, that he has no valid passport, and that he has never traveled outside the United States leads to the conclusion that there are conditions of release that can reasonably assure the appearance of the defendant to further court proceedings.

The concern of the community's safety, however, is more complex. The government has at least three witnesses that will testify against Mr. Velázquez at trial. As to access to drug proceeds, the government has proffered that one of these witnesses has seen the defendant delivering money to one of the leaders of the drug trafficking organization, while another witness will testify that defendant's business is simply a façade for, among other things, transporting drug proceeds on behalf of or to the leaders of the drug trafficking organization. Furthermore, the government has proffered that HSI once intercepted a parcel that contained in excess of $48,000 in cash, yet it did not specify during the bail review hearing what evidence did it have that the money in this parcel constituted

drug proceeds. Without minimizing the seriousness of the offense of assisting in the transportation or laundering of drug proceeds, access to underground money places mainly a concern as to risk of flight, and for the reasons explained above, it is hereby determined that there are sufficient conditions to reasonably assure the defendant's appearance to further court proceedings.

With respect to the transportation or sale of drugs, the government's proffer of the evidence is not very specific, aside from indicating that one witness has knowledge that defendant sold one eighth of a kilogram of cocaine for [1] Julio De Jesús González and that another witness will testify that defendant transports drugs in his business vehicles. The government's proffer of the evidence, however, does not detail how often did Mr. Velázquez sold cocaine, or whether the sale of the one eighth of a kilogram of cocaine was an isolated event. It is also unclear from the government's proffer of the evidence what types of drugs Mr. Velázquez allegedly transported in the business's vehicles, in what quantities, and how often. To all of this, we note that the Pretrial Services Report indicates that although Mr. Velázquez does have a history of personal use of marijuana and cocaine, the urinalysis yielded negative results to all drugs tested.

Finally, we turn to defendant's alleged use of firearms. During the bail review hearing the government clarified that it does not have evidence that the defendant transported firearms in limousines. Therefore, the court must amend the previous findings of its detention order accordingly. The government did reaffirm, however, its proffer that defendant has been seen with an AK-47 rifle. The proffer regarding the AK-47 rifle cannot be taken lightly by the court. Yet, it appears that the government's evidence as to Mr. Velázquez's access to the AK-47 rifle boils down to the testimony of one cooperating witness, with no other independent corroboration and no specificity as to whether this witness saw Mr. Velázquez once or on multiple occasions with an AK-47.

Furthermore, although each defendant in a multi-defendant drug-trafficking case must be evaluated individually according to the particular circumstances that are applicable, it is noted that as to co-defendant [20] Héctor Díaz Madera the government did not oppose conditions of release. ECF No. 719.  In the case of Mr. Díaz Madera, the government argued or presented evidence to the effect that he used limousines or vehicles that were used to transport tourists for the transportation of illegal substances and money belonging to the organization of [1] Julio De Jesús Gómez.  ECF No. 631 at p.45.  Mr. Díaz Madera also stored weapons for the drug trafficking organzation. ECF No. 46.  One witness alleges that Mr. Díaz Madera participated in the destruction of a vehicle used or related to a murder.  Id.  According to the witness, Mr. Díaz Madera was seen with a firearm and a gallon of gasoline.  Id.  Another witness indicates that he received from Mr. Díaz Madera drugs and a firearm.  Id. at 47.  In sum, on the one hand the government does not object to the release of [20] Héctor Díaz Madera, a runner of a drug trafficking organization that stores weapons, has at least once transferred a firearm, was seen armed in relation to an incident of destruction of evidence regarding a murder case, and according to the Pretrial Services Report has a prior juvenile arrest, but on the other objects to the release of [29] Miguel Velázquez Rodríguez, a seller of the drug trafficking organization whose only prior encounter with the law is a motor vehicle violation charge withdrawn by the prosecution in the Humacao Superior Court, against whom there is no evidence that he transports or stores firearms, and against whom only one witness can testify that he has seen him with an automatic firearm – testimony that is unclear as to whether this occurred only once and of which no other independent corroboration has been brought to the attention of the court.

Upon review of the totality of the circumstances stated above, it is hereby concluded that Mr. Velázquez has rebutted also the presumption of danger to the community.  Therefore, in view that there is a combination of conditions that can reasonably assure the defendant's appearance to

further court proceedings and the safety of the community, the court sets conditions of release for [29] Miguel Velázquez Rodríguez, and adopts the terms and conditions recommended in the Pretrial Services Report with the following modifications: (1) bail is set in the amount of $100,000, cash or secured; (2) defendant shall seek employment, but different from his line of business of providing transportation services to tourists; (3) defendant shall not enter or reside in any of the wards and streets specifically mentioned in the indictment; (4) for a period of six months, defendant shall wear an electronic monitoring device and remain under home detention.[6]  If after six months defendant has not violated any of the terms and conditions of his pretrial release, the electronic monitoring device shall be removed and replaced with a non-electronic curfew in which he shall be at his residence from 10:00 p.m. to 6:00 a.m.  All the other conditions of release, not inconsistent with this order, detailed in the Pretrial Services Report shall be fully applicable, including but not limited to testing for use of prohibited substances.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, 28th day of February of 2014.

                                                s/ Marcos E. López
                                                United States Magistrate Judge

---

[6] Defendant shall be responsible for the expenses related to the installation and use of the electronic monitoring device.